

U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

June 9, 2017

**VIA ECF and EMAIL**

The Honorable Katherine B. Forrest
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

      Re:    **United States v. Edmund Duffy,**
            **17 Cr. 30 (KBF)**

Dear Judge Forrest:

      The defendant in the above-captioned case is scheduled to be sentenced on June 16, 2017 at 10:00 a.m. The Government respectfully submits this letter in connection with sentencing and in response to the defendant's submission, dated June 2, 2017 ("Def. Mem."). The parties stipulated that the applicable United States Sentencing Guidelines ("U.S.S.G." or the "Guidelines") range is 78 to 97 months' imprisonment (the "Stipulated Guidelines Range"). For the reasons set forth below, the Government submits that a sentence below the Stipulated Guidelines Range is appropriate in this case.

     **I.**     **Offense Conduct**

      Between April 15 and May 3, 2016, FBI Special Agents working in an undercover capacity used Gigatribe, a peer-to-peer file sharing program known to be used by traders of child pornography, to investigate Internet distribution and possession of child pornography. (PSR ¶ 21). During this investigation, a user called "Daddisc" was located on the Gigatribe file-sharing network. (PSR ¶ 22). During two separate undercover sessions, undercover agents downloaded seventeen files shared by "Daddisc" which were determined to contain child pornography. (PSR ¶¶ 22-27). For example, one file was called "mom licks 10yo daughter.jpg" and depicted a nude adult female with her mouth on the vagina of a nude prepubescent girl. (PSR ¶ 24). Agents traced the IP address used by "Daddisc" to an apartment in a building located on West End Avenue (the "Apartment"), and then identified Edmund Duffy as the resident of the Apartment. (PSR ¶ 28).

      On July 14, 2016, FBI agents executed a court-authorized search warrant at the Apartment and interviewed the defendant, who was home at the time. (PSR ¶ 29). The defendant voluntarily elected to speak with agents, and made a series of statements to the agents, including the following:

- The defendant had been downloading and viewing images of children on Gigatribe for approximately five years.

- The defendant preferred to view images and videos of adults and children between the ages of 10 and 14 being spanked, but acknowledged that some images which he downloaded and made available for others contained nude children engaged in sexually explicit conduct.

- The defendant had masturbated to images and videos of children being spanked and child pornography.

(PSR ¶¶ 30-32).

During the search, agents recovered portable flashdrives and a laptop computer, which the defendant acknowledged belonged to him. A forensic review determined that these items contained approximately 175 image files and 32 video files of child pornography. There were also numerous videos of prepubescent children being violently spanked.[1] (PSR ¶ 33). Some of the child pornography included very young children; for example, one video shows a young boy in diapers whose bottom is spanked to the point of redness, and whose bottom and anus are then rubbed by the adult in the video. (PSR ¶ 36). In another, a young girl is bent over and her bare bottom is repeatedly struck with a hairbrush; the adult then rubs the child's labia and appears to digitally penetrate the child. (PSR ¶ 37). Other videos include children screaming while they are stuck with an adult's hands or hard objects such as a ruler. (PSR ¶¶ 38, 39, 41). Images also showed a nude prepubescent girl bound with ropes. (PSR ¶ 40.)

## II.     Procedural History

The defendant was charged by complaint on July 18, 2016 with one count of possession of child pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B), (b)(2), and 2, and one count of receipt and distribution of child pornography, in violation of 18 U.S.C. § 2252A(a)(2)(B), (b)(1), and 2. On January 12, 2017, the defendant was charged by Information with one count of possession of child pornography.

---

[1] Images and videos of violent spanking that did not show a child's genitals or pubic area, but only showed their buttocks, were not counted as child pornography in this case. (*See* PSR ¶ 43). However, the Government disagrees that *United States* v. *Vado*, No. 14 CR 666, 2015 WL 1611337, at *14 (S.D.N.Y. Apr. 10, 2015), cited by the defendant (Def. Mem. at 24), holds that spanking is "utterly non-sexual conduct" such that violent spanking could not constitute child pornography (under, for example, the "sadistic or masochistic abuse" category of "sexually explicit conduct," 18 U.S.C. § 2256(2)(A)(iv)). The *Vado* court used several hypothetical scenarios, including an "adult spanking a child on the buttocks to humiliate him or her," as examples of conduct which fell under a New Jersey statute prohibiting intentional touching to "degrade or humiliate" the victim, but which the court believed did not categorically "relate to" sexual abuse under federal law. The court did *not* consider whether violent spanking videos and images similar to the ones possessed by Duffy were child pornography, and the Government submits that there is a difference between a parent privately spanking a child for disciplinary reasons, as suggested by the *Vado* court, and a video or image of that activity created and distributed to others for sexual gratification, as was the case here.

On January 20, 2017, the defendant pled guilty to Count One of the Information pursuant to a plea agreement dated December 22, 2016, which was later amended on March 28, 2017 to reflect the correct twenty-year statutory maximum sentence (the "Plea Agreement"). In the Plea Agreement, the parties agreed that the Guidelines range is 78 to 97 months' incarceration. The defendant also agreed to forfeit $256,000[2] and to make restitution to the victims in an amount ordered by the Court.[3]

On May 22, 2017, the Probation Department issued the final Presentence Investigation Report ("PSR"). The PSR calculates a Guidelines Range of 97 to 108 months' imprisonment. This range differs from that in the parties' Plea Agreement based on one factor – the Probation Department added an additional two points to the offense level pursuant to § 2G2.2(b)(3)(F) because it believed the defendant knowingly engaged in distribution. (PSR ¶ 57). The Government disagrees with this enhancement because, although the defendant's images were available for others to download through the peer-to-peer file-sharing website, he did not actively seek or identify other users to send images to or directly send any images to others. The Probation Department recommends a below-Guidelines sentence of 12 months' incarceration, followed by five years' supervised release.[4] (PSR at 27).

On June 2, 2017, the defendant submitted a sentencing memorandum and accompanying exhibits, arguing for a non-custodial sentence. The defendant argues that the Guidelines for child pornography possession cases are unreasonably high, that his age and poor health would make any prison term for this crime exceedingly difficult for him, and that he faces a variety of punitive collateral consequences from his conviction that achieve the aims of 3553(a) without a term of imprisonment.

**III.     Discussion**

**A.  Applicable Law**

Although *United States* v. *Booker* held that the Guidelines are no longer mandatory, it also held that they remain in place and that district courts must "consult" the Guidelines and "take them into account" when sentencing. 543 U.S. 220, 264 (2005). As the Supreme Court stated, "a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines

---

[2] Because the defendant used the Apartment to facilitate the offense, the Government believes the property is forfeitable. However, in lieu of seeking forfeiture of the entire property, the Government and defendant agreed to a forfeiture amount of $256,000, which was calculated based on a certain dollar amount multiplied by the number of unidentified victims in the child pornography images possessed by the defendant. (This forfeiture calculation was limited to unidentified victims because identified victims were able to seek restitution.)

[3] A letter from the Government regarding restitution has been submitted simultaneously with this sentencing letter.

[4] The Government agrees that a term of supervised release of at least five years is required by statute. *See* 18 U.S.C. § 3583(k).

range," which "should be the starting point and the initial benchmark." *Gall* v. *United States*, 552 U.S. 38, 49 (2007).

After that calculation, a sentencing judge must consider seven factors outlined in Title 18, United States Code, Section 3553(a): (1) "the nature and circumstances of the offense and the history and characteristics of the defendant;" (2) the four legitimate purposes of sentencing, as set forth below; (3) "the kinds of sentences available;" (4) the Guidelines range itself; (5) any relevant policy statement by the Sentencing Commission; (6) "the need to avoid unwarranted sentence disparities among defendants;" and (7) "the need to provide restitution to any victims," 18 U.S.C. § 3553(a)(1)-(7). *See Gall*, 552 U.S. at 50 & n.6.

In determining the appropriate sentence, the statute directs judges to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing, which are:

> (A)   to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> (B)   to afford adequate deterrence to criminal conduct;
> (C)   to protect the public from further crimes of the defendant; and
> (D)   to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(2).

### B. A Below-Guidelines Sentence Is Appropriate in This Case

In this case, the Government believes a sentence below the Stipulated Guidelines Range of 78 to 97 months' imprisonment can achieve the goals of sentencing and appropriately balance the factors considered pursuant to Section 3553(a).

The offence to which the defendant pleaded guilty is serious. As the Second Circuit has noted,

> there can be no question that the dissemination of child pornography is a serious crime that causes real injury to particularly vulnerable victims. As Congress, courts, and scholars all recognize, child pornography crimes at their core demand the sexual exploitation and abuse of children. Not only are children seriously harmed—physically, emotionally, and mentally—in the process of producing such pornography, but that harm is the exacerbated by the circulation, often for years after the fact, of a graphic record of the child's exploitation and abuse.

*United States* v. *Reingold*, 731 F.3d 204, 216 (2d Cir. 2013); *see also New York* v. *Ferber*, 458 U.S. 747, 757-59 & nn. 9-10 (1982) (citing congressional and scholarly reports, and court cases). It is precisely because "[c]hild pornography harms and debases the most defenseless of our citizens" that "[b]oth the State and Federal Governments have sought to suppress it for many years, only to find it proliferating through the new medium of the Internet." *United States* v. *Williams*, 553 U.S. 285, 307 (2008). "The prevention of sexual exploitation and abuse of children constitutes

a government objective of surpassing importance," *Ferber*, 458 U.S. at 757, and this interest extends to seeking to stamp out child pornography at all levels in the distribution chain. *Osborne* v. *Ohio*, 495 U.S. 103, 110 (1990).

The Supreme Court recognized in *Paroline* that a child pornography victim "suffers continuing and grievous harm as a result of her knowledge that a large, indeterminate number of individuals have viewed and will in the future view images of the sexual abuse she endured." *Paroline* v. *United States*, 134 S.Ct. 1710, 1726 (2014) (also finding that harm to a child pornography victim is caused by "the trade in her images," and that a defendant who possessed such images "is a part of that cause, for he is one of those who viewed her images."). "Harms of this sort are a major reason why child pornography is outlawed," and "[t]he unlawful conduct of everyone who reproduces, distributes, or possesses the images of the victim's abuse . . . plays a part in sustaining and aggravating this tragedy." *Id.* The Government therefore disagrees with the defendant's contention that "the only reason [his] conduct can in any way be said to have harmed the two subjects of the images here is that the government, and only the government, informed those individuals that Mr. Duffy had possessed images of them" – an argument based on a Second Circuit case later vacated by the Supreme Court for further consideration in light of *Paroline*.[5] (Def. Mem. at 53 (citing *United States* v. *Lundquist*, 731 F.3d 124 (2d Cir. 2013)). Put simply, the *defendant's conduct* harmed the victims.

The Government acknowledges, however, that there are factors which weigh in favor of a below-Guidelines sentence. In terms of the nature and circumstances of the offense, there is no evidence the defendant ever engaged in hands-on abuse of children, and several psychiatrists have determined that Duffy does not pose a danger to children. (*See* PSR ¶ 106.) Additionally, the illegal images possessed by the defendant, while pornographic and clearly indicative of child abuse, are on the less extreme end of the spectrum, and there is no evidence he actively bartered the images or encouraged the production of any new child pornography. Finally, among all of the images Duffy possessed on his computers and flashdrives, relatively few have been classified as child pornography in this case.

As to the history and characteristics of the defendant, Duffy's criminal acts in this case appear to be an aberration in a long law-abiding and productive life in which he has done much good for the community; as the numerous letters of support which he submitted attest, he has acted as a valued and trusted mentor, generously donated to charities (particularly ones which benefited children), and spent many hours volunteering his time and experience to help others. The defendant has been in counseling since he became aware of this investigation, and has apparently been honest with his family and friends about the nature of the charges – a fact which the Government believes is a positive indication of the defendant's acceptance of responsibility. The Government also believes, based on the psychiatric reports, that the defendant is unlikely to re-offend, so there is less of a need for specific deterrence in this case.

---

[5] In *Paroline*, the parties stipulated that "the victim did not know who Paroline was and that none of her claimed losses flowed from any specific knowledge about him or his offense conduct." 134 S. Ct. at 1718. Therefore, the specific language cited by the defendant would not be the law after *Paroline* even if *Lundquist* had not been vacated.

   Finally, the Government recognizes the collateral consequences of the defendant's conviction. He has agreed to forfeiture and restitution (notwithstanding his sentencing submission's criticisms of restitution), and will be subject to the requirements of the Sex Offender Notification and Registration Act ("SORNA"), 18 U.S.C. 2250.[6] While the Government does not agree with all of the arguments set forth in the defendant's sentencing submission, there certainly are repercussions from a sex offense conviction that will burden the defendant regardless of any incarceration he may serve in this case.

   In sum, based on the specific facts of this case, the Government believes that a sentence below the Stipulated Guidelines Range of 78 to 97 months' imprisonment would adequately balance the various considerations under § 3553(a) and achieve the statute's stated objectives.[7]

**IV. Conclusion**

   For the reasons set forth above, the Government respectfully submits that a sentence below the Stipulated Guidelines Range would be fair and appropriate in this case.

                Respectfully submitted,

                JOON H. KIM
                Acting United States Attorney

         By:   /s/ Catherine E. Geddes
                Catherine E. Geddes
                Assistant United States Attorney
                (212) 637-1114

cc: John R. Wing, Esq. (via ECF)

---

[6] The defendant, a retired lawyer, notes that he has also "agreed to forfeit his license to practice law." (Def. Mem. at 2). If he has made such an agreement, it was not with the Government, as such a condition was not part of any discussions the parties had, nor is it contained in the Plea Agreement.

[7] The defendant cites in his favor the plea agreement entered into between the Government and Anthony Weiner. (Def. Mem. at 36). The facts of *United States* v. *Weiner* were quite different from this case, and the agreement itself states that it "reflects the distinct facts of this case and is not intended as precedent for other cases." (Def. Mem. Ex. 48 at 4).